IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM G. GARDNER, III, et al.,

    Plaintiffs,

v.

ENGENIOUS DESIGNS LLC,

    Defendant.

Case No. 21-2548-HLT-ADM

## MEMORANDUM AND ORDER

Plaintiffs William G. Gardner, III, and Way Too Cool LLC bring this patent infringement action against defendant Engenious Designs LLC ("Engenious"). Before the court is plaintiffs' Motion for Leave of Court to File the Amended Complaint. (ECF 11.) Plaintiffs seek leave to amend their complaint to correct the deficiencies in plaintiffs' two previous complaints that the court found failed to state a plausible claim for patent infringement. Plaintiffs' proposed amended complaint also seeks to add Kansas common law claims for defamation and false light. Engenious asks the court to deny plaintiffs' motion on the grounds that the proposed amended complaint is futile. For the reasons set forth below, plaintiffs' motion is granted.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from plaintiffs' proposed amended complaint. (ECF 12-2.) Plaintiff Gardner is the sole named inventor and owner of U.S. Patent No. 7,781,751 ("the '751 patent"), entitled "Portable Wavelength Transforming Converter for UV LEDs," issued on August 24, 2010. (*Id*. ¶¶ 8, 9.) The '751 patent "claims, *inter alia*, a portable UV LED apparatus for selectively emitting one or more of a plurality of wavelength distributions of radiation." (*Id*. ¶ 10.) The '751 patent discloses "colored glass absorption filters and other kinds

of wavelength changing absorption filters for use with UV LED battery operated devices." (*Id.* ¶ 22.)

Plaintiff Gardner began manufacturing UV lamp fixtures in 1998, doing business as Way Too Cool, which he organized as an LLC in 2007. (*Id.* ¶¶ 12, 13.) Plaintiff Way Too Cool "licenses the '751 Patent technology from Plaintiff Gardner and designs, manufactures, markets and sells certain ultraviolet flashlights and lamps, which are used in connection with rock and mineral examination and collection, among other things." (*Id.* ¶ 16.) These UV flashlights, which "incorporat[e] the patented designs" and are marked with the patent number, include Convoy C8UVLED, HHUVLED, S2+UVLED, and 51LEDUVA flashlights. (*Id.* ¶¶ 26-29.)

Engenious offers UV LED flashlights and lamps for sale through its Facebook page, its website, and at tradeshows. This includes products referred to as FYRFLY, C255-4, C255-1, B310-4, B310-1, DBL BARREL, PRPL HAZE, PRPL HAZE XL, and LNKR that plaintiffs allege infringe the '751 patent ("accused products"). (*Id.* ¶¶ 37-42.) Plaintiffs allege that the accused products infringe claims 1 and 7 ("asserted claims") of the '751 patent. (*Id.* ¶¶ 43, 141, 155, 175, 189, 209, 223, 243, 257, 277, 291, 315, 329, 356, 371, 397, 411, 437, 451.)

Over the past few years, plaintiffs have filed multiple patent infringement cases and complaints against Engenious. Plaintiffs first filed a complaint in the District of Arizona on January 29, 2020, and then later filed an amended complaint in that case. On July 21, 2020, the court dismissed that case without prejudice pursuant to plaintiffs' notice of voluntary dismissal. (ECF 1, 15, 23 in Case No. 2:20-cv-2060.) Plaintiffs then filed a complaint in this District on August 20, 2021. On November 22, 2021, the court dismissed that case without prejudice for failure to state a plausible claim for patent infringement. (ECF 1, 10 in Case No. 2:21-cv-2364.) Plaintiffs wasted no time filing another patent infringement complaint in this District, just six

hours later. Although that complaint included more specific allegations about three of Engenious' products that allegedly infringe plaintiffs' patent, the complaint still failed to allege sufficient facts to meet plaintiffs' pleading obligations for their claims of direct and indirect patent infringement. (ECF 1, 9 in current Case No. 2:21-cv-2548.) But the court gave plaintiffs one last opportunity to fix these deficiencies by filing a motion to amend the complaint. (ECF 9.) Accordingly, the proposed amended complaint attached to plaintiffs' current motion is plaintiffs' third attempt in this court to produce a complaint that satisfies federal pleading standards. The third time's a charm.

## II.   LEGAL STANDARDS

### A.  Amendment Under Rule 15

Once a responsive pleading has been filed, a party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice requires. FED. R. CIV. P. 15(a)(2). The rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006)). The court may refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same). Thus, a court is justified in denying a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992).

Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (stating the party opposing amendment bears the burden to show undue prejudice and that there is a presumption in favor of amendment absent such a showing "or a strong showing of any of the remaining *Foman* factors"). Whether to grant a motion to amend is within the court's sound discretion. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

### B. Dismissal Under Rule 12(b)(6)

Futility is the only ground Engenious invokes for the court to deny leave to amend.[1] A court may deny a motion to amend as futile "if the proposed amendment could not have withstood a motion to dismiss or otherwise fail[s] to state a claim." *Schepp v. Fremont Cty., Wyo.*, 900 F.2d 1448, 1451 (10th Cir. 1990). A complaint survives a Rule 12(b)(6) challenge when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible under *Iqbal* and *Twombly* if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This does not require "element-by-element" pleading in patent cases. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352

---

[1] Engenious also contends in conclusory fashion that plaintiffs' activity on the "FluorescentMinerals" Facebook page "may indicate undue prejudice against Engenious if Plaintiffs' request [to amend] is granted." (ECF 13, at 2-3.) But Engenious' argument on this point consists of only a bare assertion that plaintiffs' activity "shows bad faith and unclean hands on behalf of the Plaintiffs." (*Id.* at 3.) This underdeveloped argument does not properly invoke undue prejudice as a ground for the court to deny leave to amend and is insufficient for the court to actually deny leave to amend on that basis.

[2] The court previously laid out the Rule 12(b)(6) standard for evaluating pleadings in patent-infringement cases. (ECF 9, at 2; *see also* ECF 10, at 2-3 in Case No. 2:21-cv-02364.)

4

(Fed. Cir. 2021). But "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Id.* at 1353.

When considering a motion to dismiss under Rule 12(b)(6), a court must assume that all well-pled facts are true and view those facts in the light most favorable to the plaintiff. *Brokers' Choice of Am. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014); *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (when analyzing a motion to dismiss, a court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs"). "[D]isputes over material issues of fact cannot be resolved on a motion to dismiss . . . but must be reserved for resolution at trial by the appropriate trier." 5 ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 1277 (3d ed. 2019).

### III.   ANALYSIS

#### A. Plaintiffs Plausibly Allege Direct Infringement (Count I)

Engenious argues the proposed amended complaint "would fail a motion to dismiss" because it "continues to fail to meaningfully show the manner in which the accused products allegedly practice each limitation of any such claim so as to support a claim for direct infringement." (ECF 13 at 6-7.) But plaintiffs contend the amended complaint "includes hundreds of allegations as well as exhibits showing claim charts, website screenshots, and correspondence between the parties" that is "more than sufficient to meet the 'plausibility' standard for a patent infringement lawsuit." (ECF 15, at 2.) The court agrees with plaintiffs. This time around, plaintiffs have done far more than parrot the claim language. (*See, e,g*., ECF 12-2 ¶¶ 120-157 (describing FYRFLY accused product and how it meets each limitation of the

asserted claims).)  They have pleaded facts sufficient for the court to reasonably infer that Engenious is liable for the alleged misconduct, which is sufficient to state a plausible claim for direct infringement.  *See, e.g.*, *LoganTree LP v. Garmin Int'l, Inc*., 2018 WL 3458519, at *4 (D. Kan. 2018) (allowing pleading to stand because the "allegations are not conclusory statements that simply repeat the language of the claims").

Engenious admits the proposed amended complaint and attached claim charts contain a "great amount of content" but contends this still does not "show how the Accused Engenious products could ever infringe the '751 patent" because they use band-pass filters that *filter* light but do not *transform* the wavelength of the light being emitted.  (ECF 13, at 6-7 (citing Wikipedia and Rhett Peterson's declaration).)  Thus, Engenious contends, the accused products cannot satisfy the claim requirement of "at least one wavelength-transforming material" in asserted claims 1 and 7.  *Id.*  Engenious' arguments "read like classic *Markman* arguments" that are "not suitable for resolution on a motion to dismiss." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018).  Moreover, Engenious' arguments rely on materials outside the pleadings.  Such materials are not properly considered on a motion to dismiss and therefore the court will not consider them.  *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) ("When a party presents matters outside of the pleadings for consideration [on a 12(b)(6) motion], as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'").

Engenious further contends plaintiffs' allegations that these band-pass filters are wavelength-transforming material are conclusory, lack any support, and "disregard[] the fact that band-pass filters have been used with lights, including flashlights, since well before the filing of the '751 Patent."  (ECF 13, at 7.)  But the asserted patent specification contains support for

6

plaintiffs' assertion. It states that wavelength-transforming materials "may comprise any material or system that absorbs light of one wavelength or band of wavelengths and emits light of another wavelength or band of wavelengths, thus modifying the distribution of spectral density. **Such materials or systems include band pass filters**, phosphors and include also such materials or systems such as quantum dots whose properties are a combination of bulk properties and their physical particle size." (ECF 12-4, at col. 3, ll. 41-49 (emphasis added).) Engenious' assertion that band-pass filters were used with lights before the patent's filing (ECF 13, at 7) is unsupported, outside the pleadings and thus improper for the court to consider at this stage, and irrelevant to the court's determination on plaintiffs' proposed amendment.

At this stage, plaintiffs need only allege a cause of action for direct infringement that is plausible. Plaintiffs have met that burden. Engenious will have an opportunity to challenge the facts underlying plaintiffs' claims at the claim construction stage or a later procedural juncture.

### B. Plaintiffs Plausibly Allege Induced infringement (Count II)

The proposed Amended Complaint also alleges that Engenious is inducing infringement under 35 U.S.C. § 271(b). (ECF 12-2 ¶¶ 517-530.) An induced-infringement claim survives a motion to dismiss when the complaint pleads facts plausibly showing that the infringer specifically intended another to infringe the patent and knew those acts constituted infringement. *Nalco*, 883 F.3d at 1355, 1356; *In re Bill of Lading Transmission and Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). Specific intent may be shown by establishing (1) that the defendant "intended to cause the acts that constitute the direct infringement," and (2) the defendant "knew or should have known that its action would cause the direct infringement." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2009) (alterations omitted).

Plaintiffs contend the proposed amended complaint pleads sufficient facts to support a plausible claim of induced infringement because it alleges that Engenious had knowledge of the '751 patent, notice that the accused products infringe the '751 patent, and knowledge that sales and offers for sale of its infringing products would induce actual infringement by others, yet owner Rhett Peterson directed others to purchase and use Engenious' infringing products. (ECF 15, at 7 (citing ECF 12-2 ¶¶ 518-523); *see also* ECF 12-2 *¶¶* 472-474, 476-478.) Specifically, plaintiffs allege that, sometime after Engenious secured the url ENGENIOUSDESIGNS.COM on August 8, 2017, Engenious offered the FYRFLY flashlight and other accused products for sale through its website, Facebook pages, and trade shows, and that Engenious continued to do so after receiving plaintiffs' notice of the '751 patent and an offer to license on March 8, 2018, and after receiving plaintiffs' formal notice and a demand letter on February 27, 2019, which identified three Engenious products as infringing the '751 patent. (ECF 12-2 ¶¶ 31-42, 464; ECF 12-26 (Ex. W to Am. Compl.).) Plaintiffs therefore allege that, at least as of February 27, 2019, Engenious had knowledge of the '751 patent and Engenious' infringement of the same, and "knew that sales and offers for sale of its infringing products would induce actual infringement of the '751 Patent by others" and that Engenious "directed others to purchase and use its infringing products." (ECF 12-2 ¶¶ 517-523.) Plaintiffs have alleged sufficient facts to support the inference that Engenious had the specific intent to induce infringement of the '751 patent. *See Lifetime Indus., Inc. v. Trim-Lok, Inc*., 869 F.3d 1372, 1379-80 (Fed. Cir. 2017) (reversing district court's dismissal of induced infringement count).

Engenious argues that "Engenious has never had the requisite knowledge to formulate an intent [to induce] third party infringement" because "Engenious denies infringement, is of the opinion that the '751 Patent is invalid, and Plaintiffs have not been able to articulate how the

Accused Engenious Products infringe directly, either through its own components and hardware, or indirectly through a combination with a purportedly induced third-party's components and hardware." (ECF 13, at 9.) Engenious also notes that it "has provided a non-infringement opinion letter and claims chart" to plaintiffs.[3]  (*Id*. at 7 n.3.)

Although Engenious disagrees that plaintiffs have shown its products infringe (and thus it could not have knowingly caused others to infringe), "the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Bill of Lading*, 681 F.3d at 1341 (quoting *Twombly*, 550 U.S. at 556). In *Bill of Lading*, the Federal Circuit determined the patent owner had adequately pleaded intent where it alleged knowledge of the patent and had plausibly pleaded that the defendants' customers performed the claimed method, even though it was unclear whether the claimed method had really been performed at all. *Id*. at 1341-42. Likewise, here, discovery may reveal that the accused products do not infringe and Engenious is not liable, but, drawing all reasonable inferences in plaintiffs' favor, the court cannot resolve this factual dispute at the pleadings stage. *See Nalco*, 883 F.3d at 1349-50. Plaintiffs' allegations are sufficient to plausibly assert that Engenious specifically intended Facebook users and customers on its website, Facebook pages, and at trade shows to purchase and use the accused products and knew those acts would thereby infringe the '751 patent. Thus, plaintiffs plausibly state a claim for induced infringement.

### C. Plaintiffs Plausibly Allege Common Law Defamation and False Light (Counts III and IV)

The proposed amended complaint also adds Kansas common law claims for defamation and false light. These claims are based on posts that Engenious has made about plaintiff Gardner

---

[3] Again, Engenious presents matters outside of the pleadings, which the court cannot and will not consider at this procedural juncture. *See Brokers' Choice of Am..,* 861 F.3d at 1103.

9

on Facebook to the members of The Fluorescent Mineral Mart and Fluorescent Minerals Facebook groups since plaintiffs filed the first complaint in the District of Kansas on August 20, 2021.  (ECF 12-1 ¶¶ 502-505, 531-544.)

"The elements of a defamation claim are: (1) false and defamatory words; (2) communication to a third party; and (3) resulting harm to the reputation of the person defamed." *Hobson v. Coastal Corp.*, 962 F. Supp. 1407, 1411 (D. Kan. 1997).  The elements of a false light privacy action are "(1) publication of some kind must be made to a third party; (2) the publication must falsely represent the person; and (3) that representation must be highly offensive to a reasonable person."  *Castleberry v. Boeing Co.*, 880 F. Supp. 1435, 1442 (D. Kan. 1995) (stating that "Courts treat similarly defamation and false light invasion of privacy claims").  "The false light privacy action differs from a defamation action in that injury in privacy actions is mental distress from having been exposed to public view, while the injury in defamation actions is damage to reputation."  *Id.*

The proposed amended complaint plausibly alleges the elements of each of these claims. It alleges that (1) Engenious posted false and defamatory statements about plaintiff Gardner to third parties on Facebook that falsely represent that plaintiff Gardner is a "patent troll," "a thief," "THE EVIL FLASHLIGHT OVERLORD," and "evil overlord"; (2) Engenious invaded plaintiff Gardner's privacy by exposing his home address and personal phone number and by encouraging third parties to harass and threaten plaintiff Gardner; (3) these statements are highly offensive to a reasonable person; and (4) these statements have resulted in injury, including damage to plaintiff Gardner's reputation and mental distress from having been exposed to public view. (*See* ECF 12-2 ¶¶ 471, 475, 479-487, 496-501, 504, 505, 532-534, 540-541.)

In response, Engenious argues that plaintiffs cannot rely upon "a laundry list of irrelevant and conclusory statements, and 1200 pages of unverified statements . . . and legal conclusions" to establish their claims for defamation and false light.  (ECF 13, at 5-6.)  First, Engenious contends that plaintiffs' proposed amended complaint fails to plausibly plead the first element of defamation because the complaint fails to identify any words *attributable to Engenious* that refer to plaintiffs, let alone words that are false and defamatory.  (ECF 13, at 10-11; *see also id*. at 2 (contending plaintiffs "are attempting to confuse actions attributable to others as actions attributable to Engenious and/or its agents").  Engenious argues that plaintiffs' proposed amended complaint and its attachments reference persons who are not members, agents, or representatives of Engenious and a Facebook page that "does not belong to nor is it controlled by Engenious."  (ECF 13, at 2.)  But, again, these contentions rely on materials outside of the pleadings (the declaration of Mr. Peterson), which the court does not consider at this procedural juncture.  *See Brokers' Choice of Am.*, 861 F.3d at 1103.  And, although Engenious contends that neither Engenious nor its member Rhett Peterson posted anything defamatory on that forum or "has knowledge of any defamatory statements posted on that forum" (ECF 13, at 2), this is a factual dispute that is not ripe for determination at this stage of the proceedings.  The court must assume the facts in the proposed amended complaint as true when determining whether the amendment is futile, so the court cannot deny leave to amend on this basis.  Engenious will have an opportunity to challenge the factual basis of plaintiffs' defamation and false light claims at a later procedural juncture.

Next, Engenious argues that plaintiffs' defamation claim fails because plaintiffs have not **"shown"** damage to plaintiffs' reputation.  (ECF 13, at 11) (emphasis in original) (citing *Gobin v. Globe Pub. Co*., 649 P.2d 1239 (Kan. 1982).)  But *Gobin* had nothing to do with pleading

11

standards. There, the Kansas Supreme Court concluded that the trial court erred in failing to sustain defendant's motion for judgment notwithstanding the verdict because "[d]uring the trial of the action below, plaintiff offered no evidence of harm to his reputation, no evidence of damage by reason of injury to his reputation, no proof of financial loss flowing therefrom." *Id.* at 1244. *Gobin* is therefore inapposite at this stage.

Finally, Engenious argues the proposed amended complaint "includes no statements made by or attributable [to] Engenious or its Agents which have not been made within the past year about Plaintiffs" (ECF 13, at 11-12), and thus the Kansas statute of limitations bars the claim. *See* KAN. STAT. ANN. § 60-514(a). Although the limitations period for a defamation claim starts to run on the date the alleged defamatory statement is uttered or published, and it is immaterial when the claimant actually learned of the utterance or publication, *see Stephens v. Van Arsdale*, 608 P.2d 972, 986 (Kan. 1980); *Geolas v. Boy Scouts of Am.*, 23 F. Supp. 2d 1254, 1258 (D. Kan. 1998), it is not evident from the materials attached to the complaint that the alleged defamatory statements were published more than a year before the complaint was filed in this case. (*See* ECF 12-28 (Ex. Y to Am. Compl.) (showing some Facebook posts with dates in 2021, but most showing no specific date).) To the contrary, the complaint alleges that the defamatory statements about plaintiff Gardner "made by Peterson, along with Cole, as administrators and moderators of the Facebook pages for The Fluorescent Mineral Mart and Fluorescent Minerals, and on behalf of Defendant Engenious Designs, were made since the filing of the first complaint in Kansas on August 20, 2021." (ECF 12-2 ¶ 502.) Although discovery may reveal evidence proving plaintiffs' defamation claim is barred by the one-year statute of limitations, that is an affirmative defense upon which Engenious will bear the burden of proof on

12

the merits. For now, the proposed amended complaint alleges sufficient facts to make it a plausible claim that would survive a motion to dismiss.

## IV. CONCLUSION

Leave to amend should be freely given when justice so requires, and Engenious has not shown that the proposed amendment is futile. Accordingly, the court grants plaintiffs' motion to amend.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Leave of Court to File the Amended Complaint (ECF 11) is granted. Plaintiffs are directed to file their Amended Complaint within two business days.

**IT IS SO ORDERED.**

Dated May 6, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
